## In re Anonymous No. 23 D.B. 87

Disciplinary Board Docket no. 23 D.B. 87.

SCHWARTZMAN, *Member,* June 27, 1988 — Pursuant to rule 208(d), Pa.R.D.E., the disciplinary board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above petition for discipline.

### HISTORY OF PROCEEDINGS

On April 7, 1987 respondent was suspended from the practice of law by an order of the Supreme Court of Pennsylvania, pursuant to rule 214(d), Pa.R.D.E. dealing with attorneys convicted of crimes. The suspension of respondent followed his guilty plea to two counts of mail fraud and the imposition of sentence on respondent in that case.

The matter was referred to the disciplinary board pursuant to rule 214(f), Pa.R.D.E., and a petition for discipline was filed on May 1, 1987. Petitioner averred that, by his conduct in defrauding several banks, respondent had violated the following disciplinary rules:

(1) D.R. 1-102(A)(3), prohibiting illegal conduct involving moral turpitude;

(2) D.R. 1-102(A)(4), prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation;

(3) D.R. 1-102(A)(5), prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice; and

(4) D.R. 1-102(A)(6), prohibiting a lawyer from engaging in any other conduct that adversely reflects on his fitness to practice law.

The matter was referred to Hearing Committee [    ]. Evidence was taken before the hearing committee at a hearing on September 22, 1987. Petitioner's evidence was entirely documentary, consisting of six exhibits. Respondent testified himself and presented several character witnesses and five exhibits.

The report of Hearing Committee [    ] was filed on February 17, 1988. The hearing committee found that respondent had violated D.R. 1-102(A)(3), regarding illegal conduct involving moral turpitude; D.R. 1-102(A)(4), regarding conduct involving dishonesty, fraud, deceit, or misrepresentation; and D.R. 1-102(A)(6), regarding any other conduct that reflects adversely on fitness to practice law. The hearing committee concluded that there were no mitigating circumstances in favor of respondent, contrary to the arguments asserted by respondent. The hearing committee recommended that respondent be suspended from the practice of law for three years.

Respondent submitted a brief on exceptions to the hearing committee's report. In that brief, respondent asserted the belief that the sanctions recommended by the hearing committee were excessive and that mitigating factors should have been considered by the hearing committee. Respondent also submitted a brief in support of mitigation of sanctions setting forth the following as mitigating factors: good character, reputation and lack of prior misconduct; remorse; inexperience; rehabilitation;

cooperation with disciplinary authorities; health, financial and personal problems; and absence of harm. Respondent, indicating that the federal judge recognized mitigating factors and imposed a lenient sentence, requested the hearing committee to show similar leniency.

Petitioner submitted a letter brief in response to respondent's brief on exceptions. Petitioner argued that the hearing committee recommendation was appropriate, if not lenient. Petitioner asserted that the hearing committee saw respondent and other witnesses, that the hearing committee is the best judge of a respondent's credibility, that the recommended suspension is supported by the findings of fact and conclusions of the hearing committee, that the alleged failure to take respondent's inexperience into account is without support in the record, and that respondent's acts arose from a voluntary decision to follow an illegal route and not from inexperience. Along with the letter brief, petitioner submitted copies of a pretrial memo and a brief to the hearing committee. The pretrial memo dealt with the function of the hearing committee in a disciplinary proceeding following a criminal conviction. The brief to the hearing committee presented petitioner's conclusions that respondent had violated the disciplinary rules and arguments against mitigation.

The matter was referred to the board on April 19, 1988 and was adjudicated at the May 16, 1988 meeting of the board.

## FINDINGS OF FACT

(1) Respondent is an attorney admitted to practice law in the Commonwealth of Pennsylvania, having been admitted on or about November 2, 1981.

(2) Respondent was suspended from the practice of law by the Supreme Court of Pennsylvania by order dated April 7, 1987, pursuant to Pa.R.D.E. 214(b), as a result of a criminal conviction in the U.S. District Court for the [   ] District of Pennsylvania.

(3) After graduating from law school in 1981, respondent joined the tax department of the accounting firm of [A] in [   ], Pa.

(4) While with [A] respondent did accounting work for a business known as [B].

(5) [B] was owned by respondent's father-in-law.

(6) While doing accounting work on [B's] books, respondent had access to all such books as [B] then had.

(7) In or about October 1982, respondent left [A] to join [B].

(8) Respondent left [A] because he wanted to practice law and because his father-in-law had asked for help with [B].

(9) From the work which respondent did at [A] on the [B] books, he was aware that the financial situation at [B] was not good.

(10) Shortly after respondent joined [B] he came to the realization that [B] was a candidate for bankruptcy.

(11) As an attorney, respondent could have filed a petition for bankruptcy on behalf of [B].

(12) In or about the fall of 1983, respondent realized that saving [B] was going to involve more on his part than the usual business effort.

(13) Respondent admitted he could have retained outside counsel to file a petition for bankruptcy on behalf of [B].

(14) Notwithstanding that respondent was aware that he had a lawful course of action available to him, to wit, the filing of a bankruptcy petition, he

made a conscious decision to begin a "check kiting" scheme for [B].

(15) At the time respondent began the aforesaid check kiting scheme, he knew it was illegal.

(16) Respondent's check kiting scheme ran for almost three months.

(17) Respondent's check kiting scheme probably involved more than 200 checks.

(18) Respondent admitted that he did not want the [B] situation to become known in the community.

(19) Respondent benefited from his unlawful action because he received payroll checks from [B] during the period of his check kiting scheme.

(20) Respondent's mother-in-law worked at [B] was a regular business employee and his brother-in-law worked in the business during summers when he was home from college.

(21) When the banks involved in respondent's check kiting scheme began making inquiries about the matter, he realized that they were aware of what he was doing and, in essence, he was "caught."

(22) After respondent's check kiting scheme had been discovered by the banks involved, he began to make restitution for the amount the various banks lost.

(23) The bulk of the restitution which respondent made to the banks in question resulted from loans which respondent's relatives made to him.

(24) On or about August 19, 1986, respondent was charged by information in the U.S. District Court for the [    ] District of Pennsylvania with two counts of mail fraud. Said charges were filed to *U.S. v. [Respondent]*, Criminal no. [    ].

(25) On or about September 11, 1986, respondent entered a plea of guilty to the aforesaid two counts of mail fraud.

(26) On or about March 23, 1987, respondent was sentenced by the Honorable [C], Judge of the U.S. District Court, in the above-captioned criminal case.

(27) Respondent was sentenced to a period of incarceration of five years on count 1 of the information against him. However, that sentence was suspended and respondent was placed on probation for a period of 18 months.

(28) As to count 2 of respondent's information, he was sentenced to serve a period of probation of 18 months, to run concurrent with the probation established as to count 1 against him, and to serve 100 hours of community service.

(29) By order dated April 7, 1987, the Supreme Court of Pennsylvania referred the matter of respondent's suspension to the disciplinary board for the undertaking of a disciplinary proceeding to determine the extent of discipline to be imposed on respondent.

## DISCUSSION

The disciplinary board concludes, as did the hearing committee, that respondent has violated D.R. 1-102(A)(3), by engaging in an illegal check kiting scheme that involved moral turpitude; D.R. 1-102(A)(4), by committing a crime that involved dishonesty, fraud, deceit or misrepresentation; and D.R. 1-102(A)(6), by engaging in conduct that adversely reflects on his fitness to practice law.

The disciplinary board also agrees with the hearing committee conclusion that there are no mitigating circumstances in this matter. Respondent argued for several mitigating factors that have been recognized by the American Bar Association. As petitioner indicated, however, the ABA guidelines have not been adopted in Pennsylvania.

It is true that respondent maintains a good reputation, that he has engaged in no prior misconduct, and that his motive for engaging in the scheme was to save the family business. The important consideration, however, is that respondent consciously chose to act in a manner that he knew was illegal, at the same time avoiding the legal route of bankruptcy that he knew was available. Respondent's asserted intention to repay the banks after business turned around does not negate the fact that the scheme was illegal from the outset. As it turned out, respondent did not terminate the scheme until he was caught. By that time he may have written as many as 200 checks in carrying out the scheme to defraud.

Respondent argued that he lacked experience at the time he engaged in the scheme. But respondent took advantage of what experience he had gained as an attorney and an accountant to devise a scheme to defraud banks.

Respondent has argued, in favor of mitigation, that he made restitution to the banks, that he cooperated with disciplinary authorities, and that he harmed no client interests. But it was expected of respondent to make restitution and to cooperate with disciplinary authorities (see rule 214, Pa.R.D.E.) after being convicted. Furthermore, all attorneys are expected to refrain not only from harming the interests of their clients but also to refrain from harming the interests of others through illegal acts.

As stated by the hearing committee, respondent has compromised his integrity as an attorney and has tarnished the reputation of the legal profession as well.

In recommending a three-year suspension, the hearing committee failed to state the date from which the three-year term was to be calculated. The board has assumed that the hearing committee intended the three-year term to run from the time that the committee considered the matter. The board has calculated the recommended discipline according to that assumption.

## RECOMMENDATION

Based upon the foregoing discussion, the disciplinary board recommends that respondent, [       ] be suspended from the practice of law for a period of four years retroactive to April 7, 1987, the date of the initial suspension of respondent. The board recommends further that, pursuant to rule 208(g), Pa.R.D.E. the court directs respondent to pay the necessary expenses incurred in the investigation and prosecution of this proceeding.

Messrs. McGinley and Keller and Ms. Heh did not participate in the adjudication.

## ORDER

And now, September 1, 1988, upon consideration of the report and recommendations of the disciplinary board dated June 27, 1988, it is hereby ordered that [respondent], be and he is suspended from the bar of this commonwealth for a period of four years retroactive to April 7, 1987, and he shall comply with all the provisions of rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the disciplinary board pursuant to rule 208(g), Pa.R.D.E.

Mr. Justice Larsen and Mr. Justice Papadakos dissent and would impose disbarment.